The opinion of the court was delivered by
Gibson, J.
To the objection, that' an action for diverting an ancient water-course, is not supported by evidence of the removal of an artificial obstruction, it is sufficient to answer, that in the case .before us, the right depends, not on the antiquity of the watercourse, but on the agreement of the parties; and the question therefore is, would equity carry this agreement into effect?
That such an agreement may be proved by parol, was settled in Le Fevre v. Le Fevre, 4 Serg. & Rawle, 241, which, in this respect, g09s as far as the ease before us. The defence there was, that the right, being incorporeal, and therefore lying in grant, could pass only by deed. But, as the agreement was for a privilege to lay pipes, it is evident that the right acquired under it was no further incorporeal than that which passes by the grant of a mine, or of a right to build, which indisputably vests an interest in the soil. A right of way, which has been thought to approach it more nearly, in fact differs from it still further. But the defence in this case, is put on other ground, it. being contended that a mere license is revocable under all circumstances, and at any time.
But a license may become an agreement on valuable consideration; as, where the enjoyment of it must necessarily be preceded by the expenditure of money; and when the grantee has made improvements or invested capital in consequence of it, he has become a purchaser for a valuable consideration. Such a grant is a direct encouragement to expend money, and it would be against all conscience to annul it, as soon as the benefit expected from the expenditure is beginning to be perceived. Why should not such an agreement be decreed in specie? That a party should be let off from his contract, on payment of a compensation in damages, is consistent with no system of morals, but the common law, which was in this respect originally determined by political considerations, the policy of its military tenures requiring that the services to be rendered by the tenant to his feudal superior, should not be prevented by want of personal independence. Hence the judgment of a court of law operates on the right of a party, and the decree of a court of equity on the person. But the reason of this distinc-^ tion has long ceased, and equity will execute every agreement for the breach of which damages may be recovered, where an action *272 for damages would be an inadequate remedy. How very inadequate it would' be in a case like this, is perceived byr considering that a license which has been followed by the expenditure of ten thousand dollars, as a necessary qualification to the enjoyment of it, may be revoked by an obstinate man who is not worth as many cents. But, besides this risk of insolvency, the law in barely compensating the want of performance, subjects the injured party to risk from the ignorance or dishonesty of those who are to estimate the quantum of the compensation. In the case under consideration, no objection to a specific performance can be founded on the intrinsic nature of the agreement, nor, having been partly executed, on the circumstance of its resting in parol; but it is to be considered as if there had been a formal conveyance of the right, and nothing remains but to determine its duration and extent.
A right under a license, when not specially restricted, is commensurate with the thing of which the license is an accessory. Permission to use water for a mill, or any thing else that was viewed by the parties as a permanent erection, will be of unlimited duration, and survive the erection itself, if it should be destroyed or fall into a state of dilapidation; in which case the parties might perhaps be thought to be remitted to their former rights. But having had in view an .unlimited enjoyment of the privilege, the grantee has purchased by the expenditure of money, a right, indefinite in point of duration, which cannot be forfeited hy non user, unless for a period sufficient to raise the pvesamption 'of a release. The right to rebuild, in case of destruction or dilapidation, and to continue the business on its original footing, may have been in view as necessary to his safety, and may have been an inducement to the particular investment in the first instance. The cost of rebuilding a furnace, for instance, would be trivial when weighed with the loss that would be caused, by breaking up the business and turning the capital into other channels; and therefore a license to use water for a furnace would endure for ever. But it is otherwise, where the object to be accomplished is temporary. Such usually is the object to be accomplished by a saw mill, the permanency of which is dependent on a variety of circumstances, such as an abundance of timber, on the failure of which the business necessarily is at an end. But, till then, it constitutes a right for the violation of which redress may be had by action. With this qualification it may safely be affirmed that expending money or labour, in consequence of a license to divert a water-course or use a water power in a particular way, has the effect of turning such license into an agreement that will be executed in equity. Here it was not pretended that the license had expired, and we are unable to discover an error in the opinion of the court on the points that were propounded.
Judgment affirmed.