BIRLEW, Respondent, v. ST. LOUIS & SAN FRAN-
CISCO RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, February 16, 1904.**

1. **RAILROADS: Crossings on Private Property.** Section 1105,
Revised Statutes of 1899, imposes the duty on a railroad com-
pany of building crossings for the convenience of proprietors,
through whose farm its line runs, and a "crossing" includes not
only that portion of the earth's surface immediately by and be-
tween the rails, but the approaches on both sides of the track.

2. ——: ——: **Approach to Crossing.** Under section 1105, Re-
vised Statutes of 1899, the owner of a farm through which the
railroad right of way runs, after due notice, can recover from
the railroad company the cost of constructing a bridge as an
approach to a crossing, where the railroad company has already
constructed fences, gates. and laid planks on either side of the
rails at that point.

Appeal from Shannon Circuit Court.—*Hon. W. N.
Evans*, Judge.

AFFIRMED.

*L. F. Parker, J. T. Woodruff* and *W. J. Orr* for
appellant.

*J. W. Clilton* for respondent.

GOODE, J.—Plaintiff sued for the cost of a bridge
he built as an approach to a part of a farm crossing
over the defendant's right of way. The agreed facts
on which the case was decided are these:

"Plaintiff is owner of lands described in his peti-
tion. That in 1888 the Current River Railroad Com-
pany constructed its line of road across plaintiff's farm,
dividing one eighty-acre tract thereof.

"That afterwards the Current River Railroad Company conveyed its property to the Kansas City, Ft. Scott & Memphis Railroad Company, which latter company leased said property on the fifth day of October, 1901, to this defendant which, since said date, has operated said railroad.

"That on the second day of June, 1902, plaintiff delivered to defendant's agent at Winona, Misouri, the following notice:

" 'To the Frisco Railroad Company: You are hereby notified that you are required to construct a farm crossing with good and sufficient approaches thereto at a point on your railroad originally called and designated the Current River Railroad about two and one-half miles below (east) your depot at Winona, Missouri, the same being about fifteen feet west of bridge No. 41b, on your said railroad. This part of your road runs through my farm and divides it and such crossing is a necessary one. This second day of June, 1902.

" 'ROBERT BIRLEW,
" 'By J. W. CLELTON, his attorney.'

"That said right of way through plaintiff's farm is one hundred feet wide and on the north side thereof is a ditch thirty feet wide, which was caused by the original construction of said road.

"That after giving the above notice, plaintiff constructed a bridge across said ditch at the cost stated in his petition, the railroad company having already constructed and maintained lawful fences and gates at said point and laid plank on either side of the rails at said crossing.

"Plaintiff claims that it was the duty of the defendant to construct this bridge, under section 1105, R. S. 1899; while defendant claims that it was under no legal obligation to construct this bridge."

Plaintiff had judgment for the cost of the structure, and defendant appealed.

This action is founded on section 1105 of the Revised Statutes. We will copy the material parts of the section.

"Every railroad corporation formed or to be formed in this State, and every corporation to be formed under this article, or any railroad corporation running or operating any railroad in this State, shall erect and maintain lawful fences on the sides of the road where the same passes through, along, or adjoining inclosed or cultivated fields or uninclosed lands, with openings and gates therein, to be hung and have latches or hooks so that they may be easily opened and shut at all necessary farm crossings of the road, for the use of the proprietors or owners of the land adjoining such railroad. . . .

"If any corporation aforesaid shall, after three months from the time of the completion of its road through or along the lands, fields or inclosures hereinbefore named, fail, neglect or refuse to erect or maintain in good condition any fence, openings or farm crossings or cattle-guards as herein required, then the owners or proprietors of said lands, fields or inclosures may erect or repair such fences, openings, gates or farm crossings or cattle-guards, and shall thereupon have a right to sue and recover from such corporation in any court of competent jurisdiction the cost of such fences, openings, gates, cattle-guards or repairs, together with a reasonable compensation for his time, trouble and labor in and about the construction of such fences, openings, gates or cattle-guards, or the making of such repairs, together with ten per cent interest. per annum thereon from the time of the service or process upon such corporation in such suit: Provided, that before such repairs are commenced, such owner shall give five (5) days' notice, in writing, to the railroad company, by delivering a copy thereof to the nearest section foreman or station agent of such railroad company, that the

railroad fence needs repairs at a place or point named in the notice, on the lands of such owner.''

There is a clause, too, for the recovery of an attorney's fee, if a proprietor is compelled to go to law to recover an expenditure contemplated by the statute; but we are not concerned with that provision, as plaintiff obtained no relief of the kind.

The defendant made two contentions:

First. That a railroad company, though it is bound to put in a farm crossing when its right of way runs through a man's farm, is not bound to put in an approach to the crossing.

Second. If it fails to do its duty, the owner can not build the approach and get judgment against the railroad company for the expense.

That the statute imposes the duty on a railroad company of building crossings for the convenience of proprietors through whose farms its line runs, is patent on the face of the statute and has been adjudged. Baker v. Railroad, 57 Mo. 265; Sheridan v. Id., 56 Mo. App. 68; Madison v. Id., 60 Mo. App. 599; Stumpe v. Id., 51 Mo. App. 357.

What is the crossing of a railway right of way? Not alone, we think, the boards or other appliances which must be laid beween the rails and adjacent to them on the outside, and cattle-guards and wing fences to keep cattle from straying on the right of way beyond the crossing; but such structures, too, as will enable a wagon or team to go safely and conveniently on the track. This is stated to be the legal definition of the. word "crossing" in an authoritative treatise on railroad law; and respectable authorities are cited in support of the text. 3 Elliott, Railways, sec. 1097. In contemplation of law, a crossing is not only that portion of the earth's surface immediately by or between the rails of a track; but the approaches on both sides of the track; and it is incumbent on a railroad company to construct approaches needed to make a crossing usable;

and so courts of authority have decided. People v. Railroad, 74 N. Y. 302; Moggy v. Id., 3 Manitoba 209; Roxbury v. Id., 60 Vt. 121; Gulf, etc., Ry. v. Greenlee, 6 Tex. 344; Connecticut, etc., Ry. v. Claire, 6 Ind. App. 390; Collier v. Railroad, 26 Ga. 611.

In the Vermont case we have cited, the court held the railway company must extend the approaches beyond the right of way if that was necessary to make the crossing practicable.

In Farley v. Railroad, 42 Iowa 234, it was urged by the defendant that an embankment thrown up as a means of approaching a crossing was no part of the latter and that the company was, therefore, not bound to repair it. But the Supreme Court of Iowa expounded the statutory meaning of the word "crossing" to include not merely the ground on which a railway track runs, but the means of getting to the track. This interpretation we think is suitable to our statute; while by the one contended for, a crossing would sometimes be sufficient to satisfy the law, though the track could not be crossed, because it could not be reached.

It will be observed from the stated facts that in constructing the railroad, a ditch was excavated on one side of the right of way; but whether within the boundary of the right of way, or outside, does not appear. Be that as it may, the railroad company dug the ditch, and if it was necessary to build a bridge over it to enable the plaintiff to cross the track, the expense should fall on the company as much as any other expense of the crossing. Of course, a farmer can not demand a crossing where none is necessary, and must be reasonable in his request for such an outlay by a railroad company; and we apprehend that a company could defeat a claim for the expense of a crossing a proprietor had put in by showing that it was not needed, or was put in at a place where the cost was exorbitant when it would have been as useful somewhere else. That is to say, if a dispute should arise between a proprietor and a company

as to where a crossing should be located, and the company was willing to build at a point where the cost would be moderate, it would be upheld in standing out for that location if it was reasonably convenient for the use of the proprietor. No defense was made in this case on the score that an improper place was chosen by the plaintiff for the crossing in question, and it must be presumed the place was proper.

As to the defendant's second contention, that though it failed to comply with its statutory duty to build the crossing, plaintiff can not recover the expense he incurred in building it, we point to the Missouri decisions cited above as adjudications against the defendant's position.

In this connection an argument is advanced that because the statute enumerates certain items of recovery in such instances, namely; fences, openings, gates, cattle guards and repairs, but does not mention the cost of an approach among the items of recovery, that cost can not be recovered. The language of the section is careless, but it authorizes an owner to build a crossing if the company does not; and it would be unreasonable to conclude the Legislature intended to make the railway company pay for everything except an approach and make a proprietor stand the expense of that. Under the same argument the cost of the planks and gravel needed to enable the rails of the track to be driven over in safety, would have to be paid by a proprietor; for they are not enumerated. There can be no question that the intention was to throw the expense incident to building all parts of a crossing on a railroad company; whether it builds it, or a proprietor does so after its refusal.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.